**Dated: August 07, 2008**
**The following is ORDERED:**



Tom R. Cornish
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

In Re:

Samuel Kennegth Beaumont, Sr.,      Case No. 05-72121
                Debtor.                                 Chapter 7

Samuel Kennegth Beaumont, Sr.,

          Plaintiff,

v.                                                   Adv. No. 07-08023

United States of America, ex rel.,
Department of Veterans Affairs,

          Defendant.

## OPINION

This adversary proceeding came on for trial on April 18, 2008. Appearances were entered by Richard Walden, attorney for Plaintiff, and Cheryl Triplett, attorney for Defendant. The trial was continued to June 18, 2008, at which time the parties requested that this case be submitted to the Court based upon the pleadings, stipulations, and briefs previously submitted to the Court. The Court took this matter under advisement and now

enters its findings and conclusions in conformity with Rule 7052, Fed. R. Bankr. P., in this core proceeding.

## FINDINGS OF FACT

The parties have agreed that there are no material facts in dispute, and have provided the Court with a Statement of Stipulated Facts. The Court adopts these stipulated facts, and notes Defendant's statement that it has no personal knowledge of the facts listed below in paragraph numbers 3, 4, 5, and 6, but does not contest these statements for purposes of this trial. These stipulated facts are as follows:

A. Stipulated Facts

1. The Plaintiff is a disabled veteran who began receiving disability benefits from the Defendant in 1993.

2. The disability benefits were awarded to the Plaintiff pursuant to 38 U.S.C. § 1521.

3. In 2001, the Plaintiff received a probate distribution from Earl Meadows in the approximate amount, after applicable taxes, of $285,288.00.

4. Plaintiff used $ 215,000.00 of the above-described probate distribution to purchase a new residence, including funds necessary to vacate the Meadows' residence and render the new residence livable.

5. The remaining balance of the above described probate distribution (approximately $ 60,000) was paid to various attorneys in legal fees incurred by Plaintiff during the probate dispute with Mr. Meadows' heirs.

6. The probate dispute is ongoing.

7. Plaintiff reported his probate distribution on his 2001 income tax returns.

8. In approximately the Spring of 2005, the Defendant notified Plaintiff that as a result

2

of the probate distribution, Plaintiff owed Defendant $ 18,448.00 for the 2001 probate distribution and that Defendant intended to offset this indebtedness by reducing future disability payments owed to the Plaintiff.[1]

9. Plaintiff filed bankruptcy on May 18, 2005, and although not listed as a creditor, the Defendant received actual notice of the filing.

10. Plaintiff received his discharge on September 23, 2005.

11. The Defendant continued to offset the indebtedness allegedly owed by Plaintiff throughout the bankruptcy and continues to do so today.

12. Plaintiff appealed the Defendant's decision regarding the alleged indebtedness and said appeal is still pending.

13. Since the time of his bankruptcy filing, the Plaintiff has not received any of his disability benefits from the Defendant.

14. Most of the $ 18,488.00 allegedly owed by the Plaintiff has been offset by the Defendant.

B.   Additional Findings of Fact

In addition to the stipulated facts, the Court finds these additional facts to be true, based upon the briefs and supporting documents provided by the parties, including correspondence between the Plaintiff and the Defendant. The Defendant advised Plaintiff of his initial award of non-service-connected pension in a letter dated August 30, 1993.[2]

---

[1] The Court notes that the actual wording of the letter dated June 3, 2005, from the Department of Veterans Affairs to Mr. Beaumont is that benefits will be withheld "until the amount you were overpaid is recouped."

[2] The amount of Mr. Beaumont's initial award in 1993 was $ 1,465.00 per month.

That letter stated that Plaintiff's award was based upon the fact that he had "no countable income." He was also instructed to promptly notify the Defendant "[i]f there is any change in your income . . . [s]ince most changes will affect your monthly rate . . . ." Plaintiff reported the inheritance income on his 2001 Income Tax Return but that return was not filed until after he signed it on January 8, 2003. Once the Defendant became aware that Plaintiff had received the probate distribution, it notified him that his entitlement to benefits had changed, that he had been overpaid, and that his VA benefits would be withheld until the overpayment had been recouped. In addition to referring to the $ 18,448.00 as "the amount you were overpaid," the Defendant also referred to it as either an "indebtedness" or a "debt." Plaintiff was notified of his right to dispute the determination of the debt or overpayment, and request a waiver due to hardship. Once the Defendant denied his request for a waiver of the "indebtedness," Plaintiff was informed that he would have to pay this "debt" even if he did not have benefits against which the debt could be offset, and that he could pay by means of a monthly repayment plan.

## CONCLUSIONS OF LAW

Plaintiff's action is based upon 11 U.S.C. § 362 regarding the automatic stay and 11 U.S.C. § 524 regarding the discharge injunction. Plaintiff alleges that the Defendant's withholding of his disability pension was a violation of the automatic stay and the discharge injunction. Plaintiff further alleges that the amount the Defendant has withheld and continues to withhold is a "debt" as defined in 11 U.S.C. § 101(12), and is, therefore, subject to Plaintiff's bankruptcy filing and discharge. Defendant's position is that the reduction in Plaintiff's disability benefits is merely a recoupment of amounts overpaid by Defendant to Plaintiff, and that such recoupment did not violate the automatic stay nor the

4

discharge injunction. Defendant states that Plaintiff was awarded a non-service connected pension in 1993, and that the amount of the pension was based upon Plaintiff's income.

"Recoupment" is an equitable doctrine in bankruptcy that allows one party to a transaction to withhold funds due another party where the debts arise out of the same transaction. *Conoco, Inc. v. Styler (In re Peterson Distributing, Inc.)*, 82 F.3d 956, 959 (10th Cir. 1996). In other words, the doctrine "allows a creditor to recover a pre-petition debt out of payments owed to the debtor post-petition." *City of Fort Collins v. Gonzales (In re Gonzales)*, 298 B.R. 771 (Bankr. D. Colo. 2003) (*citations omitted*). The doctrine is to be narrowly construed because its effect is to allow one creditor to attain priority over other creditors. *Peterson Distributing*, 82 F.3d at 960.

The Defendant argues that it has the right and the duty to pay benefits based upon its determination of disability as well as upon financial need. It is given that authority pursuant to 38 U.S.C. § 1521, and various other statutes regarding the award and payment of veterans' pensions and benefits. Section 1521 specifies that a veteran's pension "shall be reduced by the amount of the veteran's annual income." "Annual income" is defined in § 1503 as "all payments of any kind or from any source." *See also* 38 C.F.R. § 3.271 ("Payments of any kind from any source shall be counted as income . . . .") (an "inheritance" qualifies as non-recurring income). Defendant also cites 38 U.S.C. § 5314 as authority for it to offset overpayments against future benefits. That statute is entitled "Indebtedness offsets," and provides that "the Secretary shall . . . deduct the amount of the indebtedness of any person who has been determined to be indebted to the United States by virtue of such person's participation in a benefits program administered by the

5

Secretary."

Pursuant to federal law regarding veterans pension benefits, Defendant has determined that the Plaintiff was overpaid pension benefits because he had income that disqualified him from receiving benefits for some period of time. Plaintiff's pension was to be reduced by the amount of any income he received, including an inheritance. Thus, Defendant argues that Plaintiff owes it monies he received because of an overpayment of benefits. On the other hand, Plaintiff claims that he is owed pension benefits based upon his original determination of eligibility in 1993, and that any overpayment he may have received is simply a debt he owes that is dischargeable in bankruptcy. The issue for this Court is whether Defendant could properly recoup this overpayment from Plaintiff's benefits after Plaintiff filed bankruptcy and continuing after his discharge. If the recoupment doctrine applies, then there is no "debt" or "claim" here as defined in the Bankruptcy Code, and Defendant has not violated the automatic stay nor the discharge injunction. *Aetna U.S. Healthcare, Inc. v. Madigan (In re Madigan)*, 270 B.R. 749, 754 (B.A.P. 9th Cir. 2001).

The recoupment doctrine depends upon whether Plaintiff's obligation to repay arose from the "same transaction" as his claim for pension benefits. *See Gonzales*, 298 B.R. at 774. This phrase means that "both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations." *Peterson Distributing*, 82 F.3d at 960 (*quoting University Medical Ctr. v. Sullivan (In re University Medical Ctr.)*, 973 F.2d 1065, 1081 (3d Cir. 1992)). This Court must examine the equities of the case, and determine whether the claims "are

6

so closely intertwined that allowing the debtor to escape its obligation would be inequitable . . . ." *Peterson Distributing*, 82 F.3d at 960.

This Court finds that the obligations of both parties did arise from the "same transaction." Plaintiff's claim for and award of pension benefits generated the Defendant's obligation to pay those benefits. The Defendant's obligation to pay benefits was and is contingent upon Plaintiff's financial situation, his annual income, and his responsibility to keep the Defendant informed of his financial situation. Plaintiff's inheritance had the effect of reducing the amount of benefits he could receive from the Defendant. Therefore, Plaintiff's inheritance was directly related to or intertwined with the amount of benefits Defendant was obligated to pay to him, and the resulting overpayment of benefits. It is unlawful for Plaintiff to keep any overpayments so long as the Defendant, through its own administrative procedures, has properly determined the amount of overpayment and properly considered Plaintiff's disagreement with that determination. The Court believes that it would be inequitable for the Plaintiff to receive his inheritance, continue to receive benefits as if his income was zero, then be able to discharge in bankruptcy the overpayments once it was determined that he had been overpaid.

It is not clear from the parties' briefs or exhibits how the Defendant received notice regarding Plaintiff's inheritance. It appears from the record that the determination of overpayment was not made until 2004 or 2005, several years after the Plaintiff received the inheritance income and reported it on his income tax return. However, according to the original terms of his award of benefits, it was Plaintiff's responsibility to promptly notify the Defendant following a change in his income or status of dependents. Plaintiff was specifically instructed to contact the Veteran's Administration if there was any change in

7

his income "[s]ince most changes will affect your monthly rate . . . ." The earliest it could be argued that Plaintiff gave notice of his change in income was January 8, 2003, the date he signed his 2001 Income Tax Return. That is at least one year following the date he received the monies. The Court finds that the equities in this situation are in favor of the Defendant. The Court finds, therefore, that the Defendant's obligation to pay benefits to Plaintiff and the overpayment that the Plaintiff must repay arise from a single transaction, and that the Defendant's recoupment of the overpayment from post-petition benefits did not violate the automatic stay nor the discharge injunction.

Plaintiff argues that Defendant's use of the terms "debt" and "indebtedness" is an admission that the overpayment is a "debt" within the meaning of the Bankruptcy Code, not a true recoupment since recoupment does not involve a "debt" or a "claim" as defined by the Code. *See Madigan*, 270 B.R. at 754; *Adamic*, 291 B.R. at 182. The Court does not find the use of these terms determinative of the issue of recoupment. Defendant uses several words to refer to the amount of overpayment, including "recoupment." Although the Plaintiff is correct that 38 U.S.C. § 5314 requires that the Defendant make a determination of the amount of "indebtedness," this statute was not drafted to be part of the Bankruptcy Code where such words have specific definitions and different implications. Neither the word "debt," "indebtedness," nor "offset" is specifically defined in the definitions section of this statutory scheme, 38 U.S.C. § 101. The "indebtedness" referred to in § 5314 is simply the overpayment made to the veteran that must be repaid. Even the cases regarding the recoupment doctrine cited by the parties and by this Court refer to the amount of overpayment as a "debt." "Equitable recoupment permits one party to a transaction to withhold funds due the other party, as long as both *debts* arise from the

8

same transaction." *Adamic*, 291 B.R. at 181-82 *(quoting In re Healthback, LLC*, 226 B.R. 464, 475 (Bankr. W.D. Okla. 1998)) (emphasis added); *see also Peterson Distributing*, 82 F.3d at 960. It is only a "debt" in the sense that Plaintiff has received something he is not entitled to and he is therefore obligated to repay it. The terms "debt," "indebtedness," "offset," "overpayment," "claim," "liability," and "recoupment" are all used in the context of analyzing the applicability of the recoupment doctrine in a bankruptcy. Therefore, the Court attaches no particular significance to the use of those terms in § 5314, and certainly does not regard the use of the terms "debt" and "indebtedness" therein to be an admission against the Defendant that precludes reliance on the recoupment doctrine.

Plaintiff's Complaint included a request for a determination that he has fully satisfied his obligation to the Defendant, and an award of funds paid to the Defendant through the suspension of Plaintiff's benefits, which exceed the amount paid to Plaintiff in 2001 only. These requests are not specifically included in the parties' Pre-Trial Order. However, to the extent that Plaintiff is still claiming that benefits were offset in an amount exceeding the overpayments, it is this Court's determination that this matter is one that should be decided by the administrative agency of the Department of Veterans Affairs that has been assigned to decide the Plaintiff's appeal of the determination of overpayment. Therefore, the Court declines to rule on Plaintiff's claim of overpayment.

A separate judgment denying Plaintiff's claims of relief shall be entered in accordance with the findings of fact and conclusions of law set forth in this Opinion.

###

9